**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **TAMMY BAUGHMAN,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 6:17-cv-326** |
| | § | **RWS/KNM** |
| | § | |
| **THE CITY OF ELKHART, TEXAS,** | § | |
| | § | |
| **Defendant** | § | |

**ORIGINAL ANSWER, DEFENSES, AND JURY DEMAND**
**OF DEFENDANT CITY OF ELKHART, TEXAS**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, Defendant the City of Elkhart, Texas ("Defendant" or "Defendant City"), and files this its Original Answer, Defenses, and Jury Demand in the above styled and numbered cause, and in support thereof, would respectfully show the Court as follows:

**I.**
**ANSWER**

1.      Defendant is without sufficient facts to either admit or deny the allegations set forth in paragraph I (A) (B) and (C) regarding Plaintiff's attempt to secure counsel.

2.      Defendant is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph II of Plaintiff's Complaint regarding previous lawsuits.

3.      Defendant admits the allegations set forth in paragraph III of Plaintiff's Complaint regarding the identities of the parties.

4.      With regard to Plaintiff's "Statement of Claim" as set forth in paragraph VI of

Plaintiff's Complaint, Defendant responds as follows:

Defendant is without sufficient information to admit or deny the personal information alleged by Plaintiff regarding her health status.

Defendant admits that Plaintiff owns a ring tailed lemur as alleged, and admits that this lemur attacked and bit mail carrier Marla Reeves in Houston  County, Texas in 2012. Defendant further admits that, after Plaintiff moved to the City of Elkhart, Texas, the lemur attacked and bit a citizen (Lucinda Lesley Washington while she was shopping at a resale shop located within the City.  She was taken to Palestine Regional Medical Center and treated for injuries inflicted by the exotic animal.  Defendant would also show that the lemur has attacked other citizens of the city.

**Complaint 1**

5.      Defendant admits that after biting Ms. Washington, the lemur was placed in quarantine for thirty (30) days to be observed by Anderson County Sheriff's Department officials for signs of rabies.

Defendant denies that it engaged in any conduct which violated the Plaintiff's procedural due process rights  under the Fourteenth Amendment, or any other  Amendment, to the United States Constitution.  Defendant would further show that since the lemur had bitten individuals on multiple occasions proceedings were started to deem the animal as "dangerous" under Texas Health and Safety Code §822.041 2(a)(b). Plaintiff's allegations concerning the three City Council members who have "familial connection" are vague and ambiguous, therefore Defendant lacks sufficient information to either admit or deny these allegations.

Defendant admits that a City Council meeting was held at which the City Council voted to revise its animal ordinance in order to prohibit dangerous exotic primates from the City.

Defendant admits that Plaintiff was given an opportunity to address the City Council in open session, and explained her position as to why the lemur was "not vicious" as alleged in Plaintiff's Complaint. Defendant would show that it subsequently also considered Plaintiff's request for a "reasonable accommodation" but ultimately denied the request and enforced the city ordinance. Defendant admits that Plaintiff then filed a Complaint with HUD which was then referred to the Texas Workforce Commission for investigation.

Defendant denies the remaining allegations contained in Complaint 1. of Plaintiff's Complaint.

**Complaint 2**

6.      Defendant denies that Plaintiff requested a specific reasonable accommodation, although Plaintiff addressed the City Council. Defendant admits that it decided to enforce its city ordinance and to comply with State law in an effort to protect the health, safety and general welfare of the citizens of Elkhart, Texas.

Defendant admits that Plaintiff filed a Complaint on December 9, 2015 with HUD regarding alleged discriminatory conduct by Defendant, and that this Complaint was referred to the Texas Workforce Commission for investigation and determination. Defendant denies that it engaged in any of the discriminatory conduct alleged in Complaint 2 set forth in Plaintiff's Complaint. Defendant would further show that it cooperated completely with the Texas Workforce Commission in its investigation, and responded according to the rules and regulations of the Texas Workforce Commission. The position of the Defendant City, and its defenses are set forth in the "Texas Workforce Commission Determination of No Reasonable Cause" which

was entered by the Texas Workforce Commission Civil Rights Division on April 15, 2016. A copy of the Determination of No Reasonable Cause is attached hereto as Ex. A.

Further, Defendant denies the factual contentions stated in Complaint 2 regarding the circumstances under which Plaintiff's lemur attacked several individuals. Defendant denies that Plaintiff is entitled to any relief pursuant to the allegations stated in Complaint 2.

**Complaint 3**

7.     Defendant admits that it revised its city ordinance concerning the harboring of exotic animals and/or dangerous animals. Defendant denies all allegations in Plaintiff's Complaint that it enforces city ordinance #112-081307-1 in a discriminatory manner.

Defendant admits that it took steps to enforce the city ordinance by requiring Plaintiff to remove the lemur from within the city limits, and that citations were issued to Plaintiff for continuing violations of the city ordinance. Defendant further admits that Plaintiff attended a subsequent City Council meeting on May 16, 2016, however, Defendant denies that it engaged in any conduct whatsoever which harassed Plaintiff, constituted discriminatory conduct or otherwise deprived Plaintiff of equal protection under the United States Constitution, the Fourteenth Amendment or any federal statute. Defendant admits that an open records request was made by Plaintiff, and that Plaintiff complied with all of the requirements of the Freedom of Information Act in responding thereto.

8.     Plaintiff's comments in paragraph V of Plaintiff's Complaint require no response from Defendant. However, Defendant denies that Plaintiff is entitled to the award of any damages, monetary compensation or other relief of any type.

## II.
## DEFENSES

9.      Defendant City of Elkhart, Texas is entitled to sovereign immunity from the allegations contained in Plaintiff's Complaint in accordance with the standards set forth in *Monell* and its progeny. [1]

10.     Defendant City of Elkhart, Texas is entitled to the defense of governmental immunity from plaintiff's state law tort claims, if any are alleged.

11.     Defendant City of Elkhart, Texas denies that this court or any court has subject matter jurisdiction over plaintiff's state law claims (if any) for the reason that plaintiff has never alleged a waiver of sovereign immunity from suit as to any such state law claims.

12.     Defendant City of Elkhart, Texas asserts that plaintiff's claims against them are barred because plaintiff cannot establish, and defendant denies, a violation of any of the plaintiff's constitutional rights.

13.     Defendant City of Elkhart, Texas asserts that no unconstitutional policy, custom, or practice of the City of Elkhart, Texas violated any of the constitutional or statutory rights of the plaintiff, either collectively or individually.  Further, there was no deliberate indifference in adopting any policies, customs, or practices of the City of Elkhart, Texas.

14.     Defendant City of Elkhart, Texas further asserts that plaintiff cannot establish that any unconstitutional policy, procedure, custom, or practice of the City of Elkhart existed, or was the moving force behind any alleged violation of plaintiff's constitutional rights.

15.     Defendant City of Elkhart, Texas further asserts all other defenses and immunities contained in Texas Civil Practices and Remedies Code § 101.001, *et seq,* to the extent that any

---

[1] *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978).
3660-313.Orig.Ans.,Defenses.City of Elkhart.docx

such defenses and immunities are applicable.

## VI.
## JURY DEMAND

16.     Defendant demands a trial by jury on all issues so triable.

17.     Defendant reserves the right to plead further.

**WHEREFORE, PREMISES CONSIDERED,** Defendant respectfully pray that Plaintiff's Complaint be dismissed; that Plaintiff take nothing by way of her Complaint; that Defendant recover their costs of court and attorney's fees and be discharged without penalty; and for such other and further relief to which they may show themselves to be justly entitled.

Respectfully submitted,

**RITCHESON, LAUFFER & VINCENT**
A Professional Corporation

Two American Center
821 ESE Loop 323, Ste. 530
Tyler, Texas 75701
(903) 535-2900
(903) 533-8646 (FAX)

By:        /s/ Lance Vincent
_____
        **LANCE VINCENT**
        State Bar No. 20585520
**ATTORNEYS FOR DEFENDANT
THE CITY OF ELKHART, TEXAS**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been served upon all counsel of record, as noted below, on this the 29th day of June, 2017.

/s/ Lance Vincent

_____

Lance Vincent

**PRO SE PLAINTIFF**
Tammy Baughman
505 N. Highway 287
Elkhart, Texas 75839

# Texas Workforce Commission
## A Member of Texas Workforce Solutions

Tammy Baughman
P.O. Box 307
Elkhart, Texas 75839

Voice Alcantal Chairman
Commissioner Representing
the Public

Julian Alvarez
Commissioner Representing
Labor

Ruth R. Hughs
Commissioner Representing
Employers

Larry E. Temple
Executive Director

TWCCRD# 2160038-HU
HUD # 06-16-4080-8

City of Elkhart, TX
     Respondent

By and through their representative,
Blake Armstrong
110 W. Parker
Elkhart, TX 75839

## <u>DETERMINATION OF NO REASONABLE CAUSE</u>

### I.    JURISDICTION

A complaint was filed with HUD on December 09, 2015 alleging that the Complainant was injured by a discriminatory act. It is alleged that the Respondent was responsible for discriminatory terms, conditions, privileges, or services and facilities; and Failure to make reasonable accommodation. It is alleged that the Respondent's acts were based on Disability. The most recent act is alleged to have occurred on November 02, 2015, and is continuing. The property is located at 505 N. Hwy. 287, Elkhart, TX 75839. The property in question is not exempt under the applicable statutes. If proven, the allegations would constitute a violation of Sections 301.025(b) and 301.025(c) (2) of the Texas Property Code.

Respondent does not receive federal funding.

The Civil Rights Division ["The Division"] has completed its investigation of the complaint. Informal efforts to resolve the issues were unsuccessful.

Texas Property Code, Section 301.025 (b) states:

> A person may not discriminate against another in the terms, conditions, or privileges of sale or rental of a dwelling or in providing services or facilities in connection with a sale or rental of a dwelling because of race, color, religion, sex, familial status, or national origin.

Texas Property Code, Section 301.025 (c) (2) states:

> A refusal to make a reasonable accommodation in rules, policies, practices, or services if the accommodation may be necessary to afford the person equal opportunity to use and enjoy a dwelling.

### II.    COMPLAINANT'S ALLEGATIONS:

Complainant asserts the following:

Complainant, Tammy Baughman, is a person with physical and emotional disabilities and therefore a member of a protected group. In the Fall of 2015, the respondent, City of Elkhart, Texas, through its City Council, passed an ordinance forbidding the keeping of "exotic animals" in the city limits. Complainant lives within the city limits. The ordinance became effective on or about November 2, 2015, and would forbid complainant from keeping her emotional support animal, a ring-tailed lemur, from assisting complainant in her disabilities. Complainant believes that the ordinance was written targeting her and her alone. Complainant has three times requested a reasonable accommodation from the ordinance, and asked for a variance from the ordinance, and each time such request has been denied. Complainant believes respondents are discriminating against her on the basis of her disabilities.

## III.   RESPONDENT'S DEFENSE

Respondent asserts the following:

The City of Elkhart's Ordinance does not distinguish between classes of individuals or groups. It does not have a disparate impact on members of a suspect class. The Ordinance applies to all classes of citizens who may own or choose to own an exotic animal. To prevail on an equal protection claim, Ms. Baughman would need to produce evidence showing that similarly situated persons have received more favorable treatment by the City. Rolf v. City of San Antonio, 77 F.3d 823, 828 (5th Cir. 1996). It matters not that the complainant may presently be the only citizen in the City to own an exotic animal. The only relevant issue in determining whether or not the Ordinance violates the complainant's equal protection rights is whether the City would apply the Ordinance differently with respect to other owners of exotic animals. There is no evidence to support any such contention.

Under Texas law, an ordinance is unenforceable only to the extent that it conflicts with state law. Dallas Merchants & Concessionaires Assn. v. City of Dallas, 852 S.W.2d 489, 491 (Tex. 1993). The undersigned counsel for respondent is unaware of any state law that regulates exotic animals such as the complainant's ring tailed lemur. Therefore, pursuant to the Texas Supreme Court's holding in Dallas Merchants Concessionaires Association v. City of Dallas, the City of Elkhart's Ordinance is enforceable.

As referenced above, the City of Elkhart's Exotic Animal Ordinance is a justifiable exercise of the City Council's police power to legislate in an area (exotic animals) to preserve and protect the health, safety and general welfare of the City's citizens. The Ordinance applies to all citizens of the City Elkhart and will be enforced universally as violations may occur.

## IV.   FINDINGS

Complainant provided medical documentation as evidence she has a physical or mental impairment/condition that substantially limits at least one major life activity; and therefore, belongs to a class of persons whom the law protects from unlawful discrimination based on disability.

Anderson County Sheriff's Offense Report dated June 26, 2015:

Case Number: 15-06690
Officer Writing Report: Chambers, Jimmy
Agency: Anderson County Sheriff's Office

I Deputy Jimmy Chambers did a follow up on an animal bite taken by Deputy Myers Jr. at Palestine Regional Medical Center that happened on June 26, 2015.

I went to the address 109 ACR 102 and spoke to Washington, Lucinda Leslie (W/F, DOB: 12/05/1970) who stated that while shopping at a resale shop located on State HWY 287 South she was bitten by a Ring Tailed Lemur Monkey. She said while she was looking around she opened a door where the animal was and it ran out jumped on her and bit her on the left Forearm. I explained to Washington that once the animal was located it would be placed under a thirty day observation period for rabies since it is an exotic animal. I also told Washington I would be checking on the animal at least twice a week to make sure there were no changes in the way the animal is acting and would contact her if there were.

I then went to the resale shop and home of Tammy Baughman (W/F, DOB:01/30/1958), the animals owner located on 505 N. HWY 287. I told Baughman that her animal would be placed under a thirty day observation period for rabies since it was an exotic animal. Baughman placed the animal in a secure pen outside the home where I could come check on it at least twice a week. I explained if there were no changes in the animal and it did not show signs of rabies after the thirty day observation period then the animal will be returned back to her.

Digital photos were taken of the animal along with an Animal Bite Report and Medical Release Form. Photos and Medical Release Form will be placed in the Documentation section of this report.

Nothing further at this time.

Anderson County Sheriff's Offense Report dated June 26, 2015:

Case Number: 15-06690
Officer Writing Report: Myers, Donnie, Jr.
Agency: Anderson County Sheriff's Office

Report Details:

On June 25th 2015 I Deputy Donnie Myers Jr. responded to Palestine Regional Medical Center located at 2900 South Loop 256, Palestine Texas 75801.

Upon responding to the above listed address I met with the complainant identified as Lucinda Lecelle Washington (12/05/1970 WF).

Washington advised on the above listed date at approximately 3:00 P.M. she entered a resale shop located at 214 South U.S. Highway 287 South Elkhart Texas and began to browse at some of the items located in the store.

Washington advised she was then attacked by a Ring Tailed Lemur which caused a large gaping wound on or about the inside forearm of the left arm.

Washington advised she then drove herself to PRMC for medical treatment, and contacted law enforcement officials.

An Anderson County Sheriff's Office Voluntary Witness Statement was collected from Washington which has been made part of this report, and has furthermore been scanned into the Odyssey system for review and final disposition.

Digital photographs were taken of Washington as well as the wound and have both been uploaded into the Odyssey system for review.

This case will be forwarded to Deputy Chambers (Animal control), as well as CID for review and final disposition upon completion.

Anderson County Sheriff's Offense Report dated June 26, 2015:

Case Number: 15-06690
Officer Writing Report: Chambers, Jimmy
Agency: Anderson County Sheriff's Office

On 07/10/2015, after further investigation, I discovered the same animal being held in quarantine has bitten before in Houston County.

I spoke to the owner of the animal (Tammy Baughman) about the incident and she said this happened and it was reported. I told Baughman since the animal has bitten twice I would be filing paperwork to deem the animal as dangerous under 822.041 2 (A)(B) of the Health and Safety Code. I explained once the paperwork has been filed she would be entitled to a hearing before the court within ten days to determine what would be done with the animal.

I did tell Baughman the other alternative would be since this is considered an exotic animal, if she was willing to release the rights of the animal over to a wildlife reserve or a zoo, if they take the animal. I explained it was her decision if she wished to do this and was not being forced to do so. Baughman said she would look into this. Baughman found a place called Wildfire Reserve and Rehabilitation, Inc. located in Kendalia, TX that was willing to take the animal but Baughman has decided to proceed with the court hearing instead. I spoke with David Bassi manager of the Wildlife Reserve and he is prepared to take the animal if the court is in favor of him doing so.

I spoke to the District Attorney's office and they thought it was a good idea to have the option in court of relocating the animal to a Wildlife Reserve since the animal is considered to be exotic but the court will have the final decision on what happens to the animal.

Nothing further to report at this time.

Anderson County Sheriff's Offense Report dated June 26, 2015:

Case Number: 15-06690
Officer Writing Report: Chambers, Jimmy
Agency: Anderson County Sheriff's Office

On 07/25/2015 the Ring Tailed Lemur was released from quarantine after showing no signs of rabies after thirty days and returned to the owner.

The animal could not be deemed as a dangerous animal since it is considered as a (other) or exotic animal.

As of this time there are no County ordinances in place regulating these types of animals.

The victim has been notified that the animal has been released from quarantine showing no signs of rabies.

End of Report.

City of Elkhart, TX Animal Ordinance – Approved as of October 20, 2015:

ORDINANCE NO. 112-081307-1: An ordinance of the city of Elkhart, Texas, amending ordinance No. 112-081307, providing for the control of cattle, horses, sheep, swine, goats, exotic animals and poultry in the city limits of the City of Elkhart, providing for: definitions, running at large, impoundment, control of vicious animals, fee and penalties, a severance clause and repealing clause.

Be it ordained by the City Council of the City of Elkhart, Texas:

Section 1. Definitions. When used in this order the following words and terms, unless the context indicates a different meaning, shall be interpreted as follows:

1.11 Exotic Animals: Shall mean any non-human primate, skunk, jaguar, leopard, lynx, tiger, lion, panther, bear, coyote, venomous or non-venomous reptile, or any other carnivorous wild animal or reptile.

Exhibit B - October 20, 2015 City Council Meeting Minutes:

Agenda Item Six: Discuss and approve Amended Exotic Animal Ordinance for the City of Elkhart and hear testimony from Tammy Baughman and Sheriff Gregg Taylor regarding concerns.

The Council heard testimony from Tammy Baughman regarding incidents with her pet lemur, Keanu. Ms. Baughman described how her daughter first saw Keanu at a party, dyed hot pink and being given alcohol. Ms. Baughman stated how she paid $100.00 to the person that owned Keanu to rescue him. Ms. Baughman also stated that her lemur is a family member. Ms. Baughman stated her lemur attacked the mail carrier and described the incident when he attacked the mail carrier and a couple of incidents that led up to the attack. Ms. Baughman also described an incident where her son-in-law was injured. According to Ms. Baughman with regard to the "Lucinda incident", as quoted by Ms. Baughman, Lucinda did nothing wrong. Keanu, the lemur, ran up her arm and wrapped his arms and legs around her arm. She tried to fling him off and was harmed in doing so. Ms. Baughman then made accusations regarding Sheriff Greg Taylor and his handling of the situations.

Councilman Andrew Chavarrilla reiterated that since the animal has attacked, it is now a Health & Human Safety issue so, the passing of the amended Ordinance can be and will be made retroactive.

Sheriff Greg Taylor reminded everyone that animals are unpredictable and recommends that the city pass the amended Ordinance as it is in the best interest of the citizens of Elkhart.

Ms. Baughman then brought up the issue of exotic birds, which after re-reading the wording does not include exotic birds.

Councilman Billy Jack Wright asked Ms. Baughman if the lemur had ever been vaccinated for rabies. Tammy Baughman explained at length that the animal had not and why she felt he didn't need to be.

After more discussion and questioning, City Attorney, Blake Armstrong advised the council to not discuss any further or answer questions regarding this issue.

Councilman Chris Sheridan made a motion to adopt the amended Ordinance to include swine language as well as 4H and FFA provisions. Councilman Mike Gordon voted "aye". Councilman Billy Jack Wright voted "nay". Councilwoman Beverly Anderson abstained. With a majority vote the motion carries.

Exhibit C - November 20, 2015 City Council Meeting Minutes:

Agenda Item Ten: Discuss and take action on enforceability of the City of Elkhart Exotic Animal Ordinance in reference to documents provided by Tammy Baughman.

The council opened the item up for discussion with Councilman Andrew Chavarrilla first stating that according to the City attorney, Department of Justice, and the Housing and urban Development department guidelines as well as the documents provided by Tammy Baughman, the City of Elkhart still has an enforceable Ordinance.

Councilman Andrew Chavarrilla read from the Department of Justice website printout and also about the HUD's authority regarding the Fair Housing Act. Stating that the owner must display/ prove that the owner/ handler has full control of the animal at all times.

Ms. Baughman wanted to discuss a case that she had found online that she felt pertained to this ordinance. Councilman Andrew Chavarrilla read allowed an excerpt that Ms. Baughman felt especially held specific information that the council should hear.

Each member of the council stated that they are not individually attorneys nor did they want or could they interpret case law.

Councilman Billy Jack Wright made a motion that the City of Elkhart Exotic Animal Ordinance is enforceable with regard to documents provided by Tammy Baughman.

Complainant's November 24, 2015 Reasonable Accommodation Request to the City of Elkhart, TX

To:

City of Elkhart Mayor
City Council Members

From:

Tammy Baughman
PO Box 307
Elkhart, Texas 75839

On October 20th, 2015, the Elkhart City Council voted a city ordinance in law to ban all non-human primates. As you know I have a ring tailed lemur. In accordance with the Federal Home Act and the American Disability Act making me give up my lemur will be in violation of these acts.

Reason is:

My ringtail lemur (Keanu) is my ESA (emotional support animal). I am disabled and years ago the Federal Government agreed not only for physical problems but also for mental health. I have been in constant treatment by a doctor for this for many years. So according to the Federal Government I have the right to keep a support animal that supports my mental health. Keanu has been my ESA for over 5 years.

According to the ADA, an ESA can be any animal, even a ringtail lemur. Also as long as I make "reasonable" effort to keep all citizens safe, I can keep Keanu. I have shown I can keep citizens safe. First of all the incident with Lucinda Washington happen inside of my dwelling, not outside and I since that incident I have closed and do not allow anyone inside without a notice of warning. I even have signs posted on my front door. I do not take Keanu off of my property except to a vet as needed.

During this time I am asking the council to not take any action on the removal of Keanu from my home or place a penalty fee on me. If this happens I will start legal proceedings against the City of Elkhart for violating my civil rights as a disabled person. I also will be asking for all of my legal fees to be repaid back to me and for any other options as the passing of this ordinance has caused enormous setbacks for my mental health. Please let me know what your decision is. Thank you Tammy Baughman

Complainant's November 25, 2015 Letter to the Mayor:

I would like to clarify to you that Dr. Larry Burch has been my attending physician for my depression for many years. I went to him in October as shown on the Dr. report provided to you. I talked to him about a letter but his stance is he does not want to get involved with this citing a conflict of interest because he is the city's official doctor I guess. His decision is to send me to a different doctor but in doing this I feel I will not get a fair evaluation because of this new doctor not knowing me.

I even asked Dr. Burch to refer me to another doctor since that is what he wants and I was told they would not I could do it on my own. I again went to Dr. Burch yesterday asking him to reconsider but he refuse to even see me himself, citing conflict of interest, so Marie talked to me. Again, the same thing, I asked for a letter stating how long they have been treating me for depression and for some reason they felt that was even going too far, until I insisted and Marie finally wrote it on a script pad. Now for years, since the early nineties I have used Dr. Burch as my primary and they have been great. I have maintained I felt was a good relationship with them. I even considered Dr. Burch as a friend until this point. But for some reason they slammed the door in my face on this subject and I can't help but feel there is a reason other than just a conflict of interest. As Doctor Burch is breaking his oath to do "no harm" to his patients and harm he has done to me. I was devastated when he took this position. I was his patient long before he became the official doctor for the city. I feel he also has to understand the harm he has done to me because he has treated me for depression for many years.

For the second time since this fight has begun I sat down and called every mental health specialist, not only in the Palestine area but also Tyler, Jacksonville and other towns to see if I could get an appointment. But when I explained the reason why I continually heard the common phrase "the doctor would rather not get involved or since they haven't seen me before, they cannot see me. Also the average time to get an appointment is over 6 weeks. So until I do, I am asking for the letter I previously presented to stand. The reasons are the federal law stated a letter from "a physician" is acceptable as an ESA letter. That law does not clarify if that letter has to come from a doctor in the same state or even if the "sessions" have to be in person. The person who evaluated me is a licensed

medical provider in mental health. If they were not the federal government would have shut them down immediately for unlawful medical practice which the government takes very seriously. And as presented to you in the paperwork I presented to you yesterday, the Supremacy clause states Federal law trumps state/local law in all cases.

So even if Texas has a law against being evaluated over the phone by a mental health specialist, the federal law apparently does not and if Texas law does state this. I would like you to tell me where it states this if you would. Again I am asking for the City of Elkhart to reconsider my claim for keeping Keanu.

Tammy Baughman 11/25/2015

Complainant's November 25, 2015 Additional Email to Mayor

Since this is new information I am again asking for a delay in enforcing the ordinance against me until a determination can be made. Please let me know as soon as possible. Thank you!

Tammy Baughman

Exhibit C - December 7, 2015 City Council Meeting Minutes:

Agenda Item Three: Hear from Sheriff Taylor and District Attorney regarding Animal Ordinance 112-081307-1.

Discussion ensued from Anderson County District Attorney Allison Mitchell and Anderson County Sheriff Greg Taylor regarding Animal Ordinance being enforceable. In order for the Anderson County Sheriff's Department to enforce the said Ordinance or any other Ordinance for that matter, the City of Elkhart would need to have a contract or Interlocal Agreement with the Anderson County Sheriff's Department. Anderson County District Attorney Allison Mitchell recommended contacting the City of Palestine's Code Enforcement Officer Patsy Smith regarding Palestine's Interlocal Agreement with the Anderson County Sheriff's Department.

February 18, 2016 Article on Complainant's Lemur:

Elkhart to summon lemur owner
By PENNYLYNN WEBB

The Elkhart City Council voted in Tuesday's meeting to have their city attorney draft a letter of summons for Tammy Baughman to appear before the council for a continued violation of the city's animal ordinance. Baughman came before the council in November to request a 30-day stay of enforcement on the city's new exotic-animals ordinance. Baughman is the owner of a lemur that bit a citizen who was shopping in the resale store owned by Baughman in June 2015.

The requested 30-day period was up as of 7 p.m. on Dec. 2. Baughman will be facing a penalty to be assessed by the city attorney or city council of an amount between $5 and $2,000 for every day she was in violation of the ordinance. While Baughman reported at a previous council meeting that the lemur was no longer located at her store, local residents reported to the council on Tuesday that they had seen the lemur at the property in the past few months.

March 21, 2016 History of Keanu:

In 2010 Keanu was rescued from a very bad situation when he was only 3 months old by my daughter. We were not actively looking to buy or to acquire a ring tail lemur. I tried to find a facility that we could send him to. But because of how young he was there was no place to send him to that could assure us he would be protected from other lemurs. These facilities were only set up for older lemurs and not babies. After a month of looking I decided to raise Keanu myself because I had become attached to him and he had bonded with myself and my daughter.

For the first year Keanu was allowed to go with us outside when myself or my daughter was with him. We lived out in the country and had no close neighbors at the time. Keanu was about 4 months old when one day the mail lady came down our lane. Keanu was sitting on top of our fence as I was cleaning along the fence row. She stopped well before the mail box to look at Keanu. The passenger side window was down on her car. As she was looking at Keanu, Keanu jumped on to the edge of her window door. He did not go into the vehicle. The mail carrier picked up her "mail hawk" and pushed it at Keanu striking him in the chest. (A mail hawk is a devise that rural mail carriers use to deliver mail from the driver's seat and not the passenger side. It is approximately 42 inches long and made of wood, it has a hook and a grabber on one end and a hand control on the other.) After being struck, Keanu retreated back to the fence. I spoke to the carrier and mention that if she felt afraid of Keanu she could just pass us on and I could pick up my mail at the post office.

Than several months later the mail carrier pulled into our yard and honked her horn for a delivery. My daughter went out and Keanu followed her. Again Keanu jumped on the edge of her passenger window and instead of hitting him with the mail hawk she caught Keanu around the neck with the clamp. My daughter screamed at her to release him, which she did and a verbal altercation between them happened.

After this incident Keanu was no longer allowed outside without being on a long leash or being in an enclosed pen we built just for him. On Dec 4 2012 T 4:30pm, Keanu was inside in his room and I came out and locked his door. I went in to take a shower and unknowing to me Keanu was able to come through the door, I had apparently not locked the lock correctly, as was in the living room when I finished my shower. I opened the front door to go out to use my cell when Keanu made a dash out the front door. While I was in the process of calling Keanu back, he loved to play with the dogs. Here comes the mail carrier down the road. Now Keanu was a good 200 feet from the mail box. I was walking towards Keanu when the dogs saw the mail carrier drive up and started running and barking at her. Keanu started running along the fence line on top of our pipe fence, about at the same time Keanu and I came to the gate, he went over my head and jumped onto the mail box. During this time I was shouting at the mail carrier to roll her window up. For some unknown reason the mail carrier did not do so. The mail box is less than 10 feet from my gate and I was coming alongside her vehicle still shouting for her to roll up her window when I saw Keanu jump onto her rolled down window. I could see the mail carrier through the windows of her vehicle. She again used her mail hawk and was snapping the clamp at his head when Keanu jumped back onto the mail box and as I got to the door he jumped back into her vehicle and cut her on top of her right hand. Two cuts both of them about ½ inch in length. Keanu immediately jumped back out and acting very agitated ran for the house. These cuts required no stitches what so ever. In fact the ER doctor didn't believe they were made by a primate. He thought they were made from her hitting herself trying to get away from Keanu. He cleaned the cuts and put 2 butterfly tapes on them. Note: After this happen I timed and watched the mail carrier deliver mail it took her all of 20 seconds to stop and put mail in a box and drive on. But on the day this happen she just sat there in her car for a good 2 min before Keanu came to her car? And the funny thing is, there was NO mail in my box!

The Houston County sheriff's department put Keanu into quarantine for 30 days. After Keanu came to live with us I studied the laws pertaining to having a ring tailed lemur so I was familiar with the animal laws. The sheriff's department told me they had 30 days to give me a hearing and I mention to them that I felt they were wrong because they only had 10 days. They didn't believe me and then they realized I was right, so they failed to give me a hearing to defend Keanu. Keanu was at Dr. Craven's office for 9 days after which I had Dr. Craven perform castration on Keanu and then I petition the county to allow me to take Keanu to a facility more appropriate for a primate. We took Keanu to Karen Montalvo's place, she is a bird rehabber and had a large pen where Keanu could stay for quarantine and also Mrs. Montalvo very graciously allowed me to stay in a cabin next to this pen for 21 days. During the 21 days Karen was in and out of Keanu's pen with him, and Keanu showed absolutely no aggression towards her. They even bonded. Karen Montalvo has even offered to write a letter about Keanu's behavior during his time at her facility if needed. On 15th day of quarantine sheriff's department called and said no action would be taken over this incident.

As for the incident with my son-in-law at the time, my son-in-law was a big tall guy with a booming voice. He lived with my daughter and I. Him and Keanu got along fairly well until one day, Keanu jumped on the side table and spilt my son-in-law's drink. My son-in-law became angry and jumped up and chased Keanu into a corner where a large fake tree was. He put his hand in to grab Keanu and he came out with a small cut on top of his hand. James was shouting at Keanu when this happened. The cut was small and did not require any medical attention except for a band aid. To be honest I am not even sure it was Keanu who cut him or a piece of wire that was inside of the tree holding it up. James said he thought it was Keanu but he was not sure. I mention this to the city during a council meeting just to make sure they knew about it.

Due to my health we had to move closer to a better hospital so I sold my home in Houston County and moved to Anderson County in Dec 2015. Before buying my house in Elkhart I went to the city and asked about any restrictions concerning primates. I was told twice there were NO restrictions. The house I bought is an old store/home combo. It has a very large front room that was the old store, we call that room the shop room and it has a door connecting into the main area of the house. We built an enclosed outdoor pen for Keanu for outside time and brought him into the house the rest of the time. My daughter and I wanted to open a resell shop down the road as we had been reselling for extra money for several years. Before we moved we had a small shop in Elkhart and people knew we had stuff for sale. In March we had items in the shop room for sale and a lady stopped to look at the items. Keanu was locked in the main part of the house as always during the day. We had recently taken in a large stray female dog that had come up to our house. On that day she had come into heat and wanted into the main part of the house to be with our male dog but I refused to let her in. Lucinda Washington was in the shop room looking at some furniture I had for sale. A kid I had working for me came through the front shop door and the stray dog came in behind him. The dog ran to the connecting door and instead of stopping she jumped on the door with enough force the door lock gave and the door opened. I immediately started for the door and as I did I told Lucinda that my lemur may come in and please don't panic if he jumps on her. She said no problem. Well Keanu came in and jumped onto a piece of furniture, he saw Lucinda and ran over and jumped onto her forearm, at which time Lucinda panicked and started violently swinging her arm left and right. I shouted at her to stop, she would scare Keanu, the last swing was the hardest one and she slung him off and as he was thrown off Keanu cut her fore arm. One cut less than 2 inches and part of that was just a deep scratch where you could tell it started. Lucinda started screaming he attacked her. I verbally convinced her to calm down. I put my arm around her shoulders to reassure her and at the same time I was looking for Keanu. Keanu was sitting on the seat of a chair by that time directly behind Lucinda looking at me. He was not trying to attack her in any way form or fashion. The reason he jumped on her fore arm is that is how he jumps on my arm. When he jumps on my forearm, I raise my arm so he can climb onto my shoulder. I was within 2 feet of Lucinda's swinging

arm and I saw how Keanu was trying to hold on to keep from being violently slung into a wall. He was not angry, he was scared is all. I have had Keanu for 6 years, just like if he was my own child I know his actions and his body language when I see it. Keanu did not intentionally attack Lucinda. IF Keanu had jumped on Lucinda to attack her why would he be calmly sitting on a chair behind us after he was slung off? He would have been trying to attack again and again if he did it intentionally. Not sitting there calmly looking at me like what the heck happen.

I went with Lucinda to the hospital. I saw the wound up close while the nurse was cleaning it. Lucinda kept taking pictures of it with her phone. The doctor said he would stitch it because Lucinda was a diabetic and he didn't want to take any chances. I believe she took 6 small stitches. Later Lucinda's grown daughter from Dallas posted pictures of it on Facebook BUT the pictures had been changed to make it look horrible. Her daughter said the wound was over 3 inches long which was not true at all. On the way to the hospital I told Lucinda I would pay any out of pocket expenses she had from the doctor as soon as she got the bills. For weeks after that Lucinda's daughter kept slandering me over Facebook, she even started her own fb page over it. They continually blasted me over not paying the medical bills, which in truth I had not received a one from Lucinda. Then I received a message from Lucinda saying she had to have surgery on her arm due to complications of the "bite". She needed over $800 in cash the next day to pay the hospital and her doctor. I sent her a message back saying I would have to borrow the money and as soon as she gave me the bills or a letter from the hospital saying that is what the surgery was for I would gladly give it to her. All of a sudden on her daughter's page they were saying I had consulted an attorney and was not going to pay any bills. I was forced to go to her husband's work and asked to speak to him. I told him I would gladly pay this money but I needed to make sure of what I was paying for. He said I must be mistaken. Lucinda wasn't having surgery because of the bite, she was having corporal tunnel surgery she already had planned on having. He said he would talk to Lucinda that night and make sure she sent any bills to me. I thanked him gave him my address. Needless to say I was in shock. 3 days later I received three bills in the mail. The original hospital bill when she received her stitches and 2 bills from a local doctor, all totaling around $100, which I paid immediately. But the damage had already been done. I was receiving threats continually not only towards my lemur but also myself and my daughter. We could not be outside without someone driving by and screaming threats and obscenities at us. I have never been afraid in my own home in my entire life until that point. My brother brought me a shotgun so we could have some protection if needed.

I have to back up now and tell you after the incident with Keanu of course the next day the sheriff's animal control officer came out. He told me because they could not find a facility to take Keanu he would inspect my home and outside pen to make sure it was good enough to keep Keanu contained. After the inspection he said it was quite good. Note: If the sheriff's department inspected my home and facilities and deemed them safe to contain Keanu for quarantine why wouldn't the city accept that my facilities are good enough?

I closed the front shop room so no one could come inside. The deputy said Keanu had to be in quarantine for 10 days like a dog. I said no sir it is 30 days. I told him to please let me know when the hearing was set for because I needed to know to prepare for it. He said they had 30 days to set the hearing, very respectfully I told him he was mistaken again I was to receive a hearing within ten days. He said no ma'am it is thirty. The next day he came out to check on Keanu and again I tried to explain I had 10 days to get a hearing within 10 days and again he told me no it was 30. The next day was Monday and I called Sheriff Taylor and asked him to get his deputy to read the Texas statutes on animal control because he said I would not get a hearing for at least 30 days. Taylor's response was to agree with his deputy and say it was 30 days. On the 14th day I went in to personally see the sheriff before I could show him the copy of the Texas statutes I had printed off the net. Sheriff Taylor accused me of doing horrible things and allowing Keanu to attack many other people. Than

supposedly I would make threats to them if they turned it in. I was in complete shock. He would not hear or denial of those claims from me, basically told me I was lying about not doing those things. I could not believe he said those things to me. I than laid the copy of the statutes on his desk and asked him to read the chapter I had marked. After he read it he claimed that did not pertain to this case because Keanu wasn't a dog. Instead of arguing I went home and waited. On the 30th day with no hearing to defend Keanu, Sheriff Taylor called me and he said he was making it his personal mission to get that vicious animal from me even if he had to go to Austin to do it.

After a couple of months everything was calming down and I finally felt it might be over when while at the store with my daughter a friend sent me a text about a newspaper article about Taylor going to the next city council and demanding they create a city ordinance against having primates and having it make it retroactive. From there it all started all over again with the article in the paper. Every time the city talks about the ordinance it is in the newspaper and the threats start all over again. I remember they even had the Anderson County DA come to a meeting to discuss the best way to take Keanu from me. The city council and mayor pro-tem had repeatedly humiliated me. The current mayor pro-tem Mike Gordon's own brother Pat Gordon even went so far to imply I was having sex with Keanu on Facebook. I cannot even look at Mike Gordon's face without thinking about

I have been accused of making this Emotional support animal claim up, which is not true. I have been a chronic pain sufferer for over 6 years with my back and a disease of the spinal cord membrane which affect my nerves in my body. Keanu has been with me almost from the very beginning. I have suffered from depression for years before my back went bad on me, or my disease. Keanu is innate highly intelligent, he hugs, he comforts me when I am in pain, he sleeps with me, he wakes me when my pain becomes severe at night and causes me to have nightmares. He sits in my lap when I am on the computer and rest his feet up on the desk. I look down at him and he usually is asleep in my arms resting his head against my chest just like a child. My daughter cannot have children so Keanu is the closest to ever having a grandchild I will ever get.

I have built a large portable pen inside of my home to put Keanu in when someone has to come inside to make repairs. I put in a stronger door and added 2 locks to the connecting door. I put in another door so they must go through 2 doors instead of the connecting door through a bathroom. I will look into having Keanu's teeth capped as a last resort. I will take out an insurance policy, it will cost about $____ a month. I know this is long but please understand I am fighting not only for Keanu here but also my sanity. I can't afford to sell this house and move again. Thank you for your time and consideration.

If ringtails were so vicious why would the world renowned Duke University Lemur center have a walk through for lemurs? And there are tons of zoos that have a lemur walk through.

Complainant's ___ __ review:

Complainant stated that she met with the Mayor Pro Tem, his assistant Carla Sheridan and B.J. Perry. She stated the meeting was recorded. She told them about her security measures for Keanu and the things she had already put in place. She stated that they asked her to come to the City Council meeting on the following Monday to answer any questions anyone might have. Complainant stated she would be there.

April 13, 2016 Interview with Respondent's Representative, Blake Armstrong:

Subject: _____

Ms. _____ The Elkhart City Council met on April 4th, 2016 to discuss the requested accommo___ ___ f__ Ms. Baughman relative to her lemur. Ms. Baughman had previously met with the ____ r Pr___ __, Mike Gordon, and the City Secretary, Carla Sheridan, to discuss what she had done __ ___ur __ __ lemur.

Ms. Baugh___ _l_ __ ___sk for a specific accommodation. Rather, she informed the Mayor Pro Tem and City S___ ___y __ __he had done the following regarding the lemur:

1. Secure_ ___ me __ ___egate the animal from an member of the public;
2. Enlarg__ ___rio_ __e for the lemur;
3. Only t___ __ __ len__ __ ___t at night and accompanying the lemur.

Ms. B___h__ did n_ _point to any disability or health condition during the meeting.

The Co__ ___ __ __ continue with enforcement of the ordinance. As noted in previous corresp___ __ t__ __ ncil has broad discretion to legislate in the areas of health, safety and genera__ ___ of __ _zens. Please contact me with any questions. Thank you. Blake

Blake E. A__ __ong

BIRDSO__ __ __MS ___ONG, P.C.

## V.     ANAL__

In order for the ___ ___inat__ __ prevail on her or their claim of discrimination in violation of § 301.025 (b) of the Texas Property (___ __th __ __ __t to the allegations of" failure to make a reasonable accommodation and Terms and Conditions"), t___ ___ng __ ___facie elements must be met:

1. The complaina__ ___en_ __ __ of a protected class.
2. The complai__ ___ the __ __dent's tenant.
3. The responde__ ___ed __far_ __able or less favorable terms or conditions on the complainant's tenancy.
4. The respond__ ___ __ __ __e such a terms or conditions on similarly situated tenants not of the complainant's protected class.

Complainant pr__ ___di__ __cumentation as evidence that she has a physical or mental impairment/condition that substantial__ ___ __ __ __e major life activity; and therefore, belongs to a class of persons whom the law protects from u__ ___ ___ri__ __tion based on disability. Therefore element one is met.

Complainant w__ ___ ___'s tenant however Complainant is a resident of the City of Elkhart who made a reasonable acco__ __ __ __st on November 24, 2015 after Respondents approved an animal ordinance outlawing exotic __ __ __ __ __nant requested that she be able to keep her ring tailed lemur, which she used as an emotional supp__ __ __ __e could continue the use and enjoyment of her home. Therefore element two is met.

Respondent's in_ __ __ ___rdinance on October 20, 2016 and made it retroactive to all citizens who reside in the city limits __ __ __ __ The ordinance outlawed Complainant's animal as it was an exotic animal. Complainant's __ __ __ __ ___tory of attacks. One attack happened in the City of Elkhart, TX and two others took place in H__ __ __ __ Respondents met with Complainant on April 1, 2016 to engage in the interactive process. Compl__ __ __ __e was able to give her suggestions for things she had done and things she had planned to do t__ __ __ __ _support animal secure. Complainant stated that she was asked to attend the April

4, 2016 City C_____ _____ _____ answer any questions respondents might have. Complainant stated that she attended the meeting a_____ _____ _____ _____ Respondents rejected her suggestions and decided they could not grant her the reasonable a_____ _____ _____ to the health, safety and welfare of its citizens. Respondents listened to Complainant's _____ion _____ _____ ultimately decided that they were insufficient in terms of protecting the safety and welfare of its _____ That _____ uidance with respect to Service Animals or Emotional Support Animals states that a request for a _____bl_____ mmodation can be denied if (1) the specific assistance animal in question poses a direct threat t_____ _____ _____afety of others that cannot be reduced or eliminated by another reasonable accommodation _____ _____ e assistance animal in question would cause substantial damage to the property of others that ca_____ _____ liminated by another reasonable accommodation. Given the known history of this lemur, Respo_____ _____e _____asonable in denying Complainant's request. Therefore elements three and four are not met.

In order for t__ _____l__in _____ evail on her or their claim of discrimination in violation of § 301.025 (c)(2) of the Texas Property _____ _____di _____ _____ e allegations of" failure to make a reasonable accommodation and Terms and Conditions"), t_____ _____ _____acie elements must be met:

1. The compl_____ _____ pe_____ _____ a disability.
2. The respond_____ _____ w or _____bly should have known that the complainant is a person with a disability.
3. The compl_____ reque_____ _____ reasonable accommodation in the rules, policies, practices, or services of the respondent.
4. The reques_____ _____ _____ may be necessary to afford the complainant an equal opportunity to use and enjoy the dwelling.

As set forth a_____ _____ _____ _____ _____ met.

Complainant _____ requ_____ _____spondents for a reasonable accommodation on November 24, 2015 to keep her emotional su_____ _____ imal _____ dents requested medical documentation for Complainant's disability which Complainant _____ _____ fo_____ _____ment two is met.

Complainant _____ _____ a _____ea _____de accommodation in the policies of the Respondents; however, Complainant's emotional sup_____ _____ f d_____ ory of attacks. Complainant and Respondents engaged in the interactive process to see if there _____ _____tions _____ ing the animal which would allow Complainant the equal opportunity to use and enjoy her dw_____ _____ nd _____ others safe. Complainant gave her suggestions for securing the animal. But, Respondents _____ _____ omp_____ i_____ equest because they were concerned for the health, safety and welfare of their other citizens _____ _____ _____ av _____ other alternative options to secure Complainant's emotional support animal. Therefore ele_____ _____ nd f_____ e not met.

Based on the _____ _____ _____ ce _____here is not sufficient evidence to show that Respondents discriminated against Complainant o_____ _____ _____ e _____lity.

VI.    CO_____ _____

Based upon t_____ _____ _____ eser_____ _____bove, the Division has concluded that there is no reasonable cause to believe that Respon_____ _____ _____ te_____ _____nst the Complainant on the basis of disability in violation of Sections §§301.025(b)_____ _____ _____ _____ e Texas Property Code, as alleged.

The Director _____ _____ to _____ _____ _____on of authority based on the Texas Fair Housing Act, has determined that reasonable c_____ _____ _____ot _____xis_____ _____lieve that a discriminatory housing practice has occurred. Accordingly, the above-cited c_____ _____ _____ h_____ by _____ssed.

## VII. ADDITIONAL INFORMATION

The final investigative report relating to the investigation is available upon written request from the Texas Workforce Commission, Civil Rights Division, ATTN: Open Records Section, 101 East 15th Street, Austin, Texas 78778-0001. The requestor must supply both the TWCCRD and HUD Complaint Numbers.

The Division's Fair Housing Compliance Manual and HUD regulations implementing the Fair Housing Act, 24 CFR 103.400 require that the dismissal be publicly disclosed, unless a Respondent requests that no disclosure be made. Such a request must be made by a Respondent within thirty (30) days of receipt of this letter, and should be addressed to the Texas Workforce Commission, Civil Rights Division, 101 East 15th Street, Room 144-T, Austin, Texas 78778-0001. Notwithstanding such a request by a Respondent, the fact of the dismissal, including the names of the parties, will be public information available upon request.

Complainant may request a reconsideration of the Determination of No Reasonable Cause. Such a request must be made by within thirty (30) days of receipt of this letter and should be addressed to Director, Texas Workforce Commission, Civil Rights Division, 101 East 15th Street, Austin, Texas 78778-0001. A reconsideration will not be granted unless each of the following three criteria is met:
  (1) the evidence, which was not presented during the investigation;
  (2) the reason the evidence was not presented during the investigation, and
  (3) the explanation of how consideration of the evidence would change the outcome of the case.

Both the federal and Housing Acts also provide that a Complainant may file a civil action in an appropriate U.S. District or State Court no later than two years after the occurrence or the termination of the alleged discriminatory housing practice, notwithstanding this dismissal by HUD and the Division. The computation of such two year period does not include any time during which an administrative proceeding under the Act was filed. In addition, the court may appoint an attorney if, in the opinion of the court, such person is financially unable to bring such action. See U.S.C. 3613.

Texas Workforce Commission Civil Rights Division invites you to provide us feedback so we may continue to provide you with the best possible service. Please help us by taking a short survey at

Lowell
Director
Texas Workforce Commission Civil Rights Division

4/15/16
Date

cc: